Case number 319-0579, Joseph Fridman as independent executor of the estate of Frida Fridman, deceased appellant versus OSF Healthcare Systems et al. Mr. LaFont, are you connected audio and you're connected by video. Audio is... I am connected by audio. Can you hear me, Judge? I can hear you. Ms. Jansen? I am here, yeah. Okay, then we'll proceed. Mr. LaFont, you may proceed. Thank you, Your Honor. Good afternoon. May it please the court and counsel. My name is James LaFontaine. I'm the attorney for the appellant, Joseph Fridman, executor of the estate of Frida Fridman. This case is about Frida Fridman's family's search for the truth and justice regarding why Frida Fridman died during her routine transport within the OSF St. Francis Medical Center. Your Honor's discovery, as we know, is a truth-seeking process. The Illinois Supreme Court has repeatedly stated that full and truthful disclosure is required of the parties and their counsel. In this case, there was not full and truthful disclosure by OSF. There are three issues presented to this court. The first, the trial court error when it denied Appellant's 2-1401 petition to vacate when it found that Fridman could not prevail because he did not show that OSF acted with intent to deceive by failing to disclose the existence of additional pages of a pomanent incident report. The other issue is the trial court error when it denied the petition to vacate without holding an evidentiary hearing. And finally, the court properly ruled when it denied the defendant's motion to dismiss. I'd like to start off, if I could, addressing... Your Honor, can I ask about the seven-month delay from your knowledge and not doing anything for seven months? Sure. Judge, there were seven months between the time that we discovered the existence of additional documents, which occurred on December 10, 2018, to July 3, 2019, when we filed our petition. We had... I had actually learned about it in the beginning of my trial against OSF in February. Then there were the holidays. I tried another case in federal court in February. I tried a third case in state court, I think, in March. And there were just... There was a lot going on, and I was trying to figure out what we needed to do here. So that was the reason that it took me seven months to file a 1401 petition, Your Honor. But under the plain reading of the statute itself... Well, did the trial court make any ruling that you lack due diligence? No, sir. Okay. So there's nothing more to review either way on her decision on that issue, right? Well, I don't believe so. I agree. I don't believe so, but I think that... There's nothing in the record that Judge Hoos addressed that issue and ruled favorably or wrongly, right? No, I do believe that she ruled and found that there was a tolling of the two-year period. There was a tolling of the statute while the information was not known to us. Well, does that go to due diligence, the factor? Yeah, I think it does because... I think it does because we had two years to bring the statute of limitations. Well, I'm not sure that if it's tolled and it keeps your two-year alive, is that what you're trying to say tolling does? Yes. Okay. But that still doesn't mean that due diligence isn't a factor to be considered even within two years, is it? Sure. No, I agree. Okay. But I'm asking a question. Did the trial court rule that you lacked due diligence? No, sir. Okay. Thank you. Yeah. In fact, I think to the contrary, they felt that I acted diligently given the circumstances. By implication? Yes, sir. Okay. The preliminary issue of whether the defendant had presented a meritorious claim is inherently a question of law and is therefore subject to de novo review. That comes from this court, the third district in the Lyons decision. So I do believe, and I know there's an issue here with whether or not this court is to review this issue de novo or under an abuse of discretion standard. I would point out, Your Honors, that during the hearing on the motion in front of Judge Hoos, defendant's own attorney, Rhonda Patton, stated the existence of a meritorious claim is a legal question. That's an R38 in the record. So she acknowledged that it's a legal question. And I believe this court should review everything under the de novo statute with fresh eyes. Well, how are we to determine meritorious claim? What did the trial court say in regard to meritorious claim? Yeah. Judge, the trial court really, I think, looked at this and added an extra element or requirement for the Fredmans to prevail. If we look at the ruling from the judge on that issue, she indicated, she said, I think that that's why the requirement is there has to be fraud. There has to be deceit. There has to be some intentional misrepresentation, something more than just I made a mistake and didn't give the entire three pages. That's an R51. Then she went on to say, I just think that at the end of the day, it's not enough to establish fraud. And that's really what I have to find. That's an R54. It's our position that the court added an element that is not required under air room for a 1401 petition. And so I think that that is one of the issues that's before the court. With respect to the meritorious claim, Your Honor, there is no dispute between any of the parties that the plaintiff requested these documents and this information. We did that by way of interrogatories, request to produce, and even supplemental interrogatories and request to produce. And finally, eventually, we had to file a motion to compel the production of the Palenik report. And when I did that, OSF did not file any kind of response. Instead, the day before the hearing, they gave me a one-page document. And then when we went into the hearing the next day before Judge Corey, Judge Corey said, I'm granting your motion. The opposing counsel at that time said, well, it's moot. I already gave it to him. At that point in time, that was the time for the attorney to let us know that there were additional materials or information available that they were also asserting a privilege to. And that never happened. That didn't happen for the next several years as the case went on. And we waited until we thought we had everything before we started taking depositions of the parties and the witnesses. And I can tell you that the defendant never disclosed this information to us. And it's basically fractional disclosure. They gave us some of the evidence, but not all of the evidence. We only found out about the additional evidence while we were in trial during opening statements. And they put two pages or actually three pages of a Palenik report in a different case up on the screen. Anytime there's an adverse incident, you're going to have a Palenik report done by the hospital. So they put it up, but they put three pages up. And that was the first time I knew that there was additional information out there. These Palenik incident reports are form documents or form reports. And pages two and three of that form incident report ask questions like this. Injury details, facts only. Reporters recommendation for prevention. So in this case, the reporter was the respiratory therapist. Her recommendation for prevention. Well, I have a question. Was there ever a hearing on this thing to make a proof? I mean, what did this trial judge do? Well, Judge, no, there wasn't. You're trying to argue that you're trying to argue appears to me that an error was found that you were unable to prove intentional or fraudulent concealment, right? Right. Actually, she, Judge Hoost ruled that I did not prove intentional concealment. On the basis of looking at what? On the basis of the information that was presented in the briefs. She did not. I mean, didn't you file a motion or something? Yes, I did. I filed my motion. And at the hearing before Judge Hoost, I did ask Judge Hoost to do an in-camera inspection of pages two and three. She actually asked the defense attorney, do you have it with you? And they said, no. And they explored that for a little while. I felt that it was very important for the court to see what was contained in there. I mean, you know, reporter's recommendation for prevention, what could have been done to prevent the case, case summary, actions and referrals and follow-up status. These are all things that would have been contained in there. Is this the first time you've ever learned about these kinds of reports? Yes, Judge. No other case or no other information you ever had showed there could be more than one page to one of these reports. In this case, I want to make this record very clear. Judge, in this case, they gave me one page the day before the hearing on the motion to compel and said, here it is, this is it, will you cancel the hearing? I said, no. Then when we went into court, she said, I've already given them everything. I gave them the report. 12 days later on another case, on a different case, they sent me a one-page document in that case. Another one-page PEMENIC report. So I believe that the PEMENIC incident report that they had consisted of one page. And when I subsequently, Judge, I sent them an interrogatory asking them to describe the PEMENIC reports to me. This is after they had produced the one-page report. The response I got back from Dr. Tim Miller at OSF and his response to the answer interrogatory was, see the report we gave you. Now, at no point in time did anyone ever say, there are two other pages or there's additional information. I didn't know. What is it? Those are facts of, yeah, we know that till the cows come home, but let's put it this way. What is it that you have to, and when do you have to show intentional concealment, fraudulent concealment? What's the evidence of that? Just the fact you didn't get the additional pages? No. Okay. So Judge, I don't think that there is any requirement that the movement on a 1401 petition show intentional fraudulent concealment. There is no requirement. The whole reason for my motion in the lower court and why I focused on the fact that there was concealment was because of the tolling issue. I knew that that was going to be an issue and I wanted to make sure that that was clear. It was my opinion that it was intentional, but the court found just that she couldn't find intentional fraudulent conduct, but she did find that it wasn't. So did you prevail on the tolling issue? I did. So your 214-01, it was within the two-year period of time, correct? Yes, sir. And so what was the, and so the 214-01 should have been granted in your opinion on the basis of what? It should have been granted because we showed that we had a that there was additional evidence out there that existed that we had no information of and didn't have the ability to look into any further. I mean, these issues, the reporter's recommendation for prevention, what could have been done to prevent this goes to the very heart of the case. I didn't take any depositions on this case until after I received what I thought was all of the evidence. So you're claiming this is newly discovered evidence, right? And so set aside that judgment, right? Yes, sir. Okay. So where are we getting intentional fraud and concealment all the time? It does not matter. The issue of whether it was intentional is not relevant to this issue at all. So where's the trial court now that we've kind of focused and refined this, where did the court go wrong in not granting your 14-01 on what basis? Sure. Judge, it goes back to when the judge made her ruling, for some reason, she added an additional element. She felt that she had to find that there was fraud, intentional conduct. And she indicated she could not come to that conclusion that there was intentional, an intent to conceal this information from... Oh, your argument to summarize it is that trial judge was in error as a matter of law on a 2-14-01. Yes, sir. Okay. That is. Yeah. I'm just trying to distill it down to the essence. Thanks. You're doing a better job than I am. I don't know about that. I'm just trying to understand it. Yeah, Judge. I do think that when it comes down to it, the judge just made an error applying the law in this case. And I think that's why it requires a de novo review. I think that everyone looking at this is going to agree that this would have made, you know, it would have been outcome determinative if this had been here. And I can tell you... Mr. LaFonte, the red light came on. Your time is up, but you'll have five minutes in reply. Thank you, Judge. You're welcome. Ms. Jansen, you may respond. Thank you. Good afternoon. I want to start with the timeliness question. And Judge Holdridge, as you hinted, there's a difference between timeliness in terms of the statute of limitation and timeliness in terms of due diligence. I think both cases plaintiff loses here in terms of the statute of limitations. He's... There's no question that the petition was filed more than two years after the entry of the voluntary dismissal. To try to avoid that, he has argued his case for fraudulent concealment, but there's a substantial body of law indicating that if you have a reasonable amount of time within the limitations period, fraudulent concealment does not apply to total statute of limitations. He had five months to file this petition within the limitations period. So under well-established Illinois law, fraudulent concealment does not toll that limitations period. As far as due diligence, again, I understand completely. We lawyers, we get busy, we've got lots of cases, but the Supreme Court in the Diakou case indicated that just simply saying you're busy doesn't cut it for due diligence. You have to act diligently, not just at the trial court level in discovering the new evidence, but also once you've learned of it, you have to act diligently in presenting your claim for relief under 2-1401. He waited seven months after discovering that before he filed his petition. And under Diakou, Diakou was three months and some pretty extensive explanations for the delay. In this case, it's seven months and no real meaningful explanation for the delay. So whether based on the two-year statute of limitations or based on the due diligence requirement, the trial court should have simply dismissed the petition as untimely. As to the meritorious claim, first, I would point out that the statute, I'm sorry, the standard of review is not de novo with respect to the ruling on the merits of the petition. The standard of review with respect to the merits is for an abuse of discretion. And understandably, there was for a confusion about the appropriate standard of review. The Warren court addressed that, that the People v. Vincent case seemed to suggest that we were moving to a de novo standard, but that's not the case. De novo applies when the 2-1401 grounds for relief are based on a legal issue. Where it's a fact-based challenge as it is here, including consideration of diligence and meritoriousness of the defense, the court's decision is reviewed for an abuse of discretion. And the court, Judge Hoos did not just find that the petition should be denied because she didn't find any indication of intentional fraud. She additionally found that there was no indication that discovery of these additional pages any sooner would have made any difference in the outcome. We don't know why plaintiff voluntarily dismissed her case. There's some indication in the discussion at the hearing on the petition. Perhaps it's because his causation expert conceded that even if all of the healthcare providers breached the standard of care, the outcome would not have been different because Ms. Fredman had a terminal illness. Essentially she was going to die regardless, unfortunately. And that's what the court found. She says, you know, am I going to reopen this just for the sake of reopening it? It's kind of a red herring. Can I ask, there were findings here, but there was no hearing where anybody presented any evidence. This is all just on pleadings, right? Petitions. The petitions and the affidavits that were filed, yes. Yeah. So it was just based on the petitions and there were affidavits attached to the petitions, but that's it, right? Correct. And there was no request for an evidentiary hearing. There was a reference in counsel's response to our opposition saying that if the court were inclined to dismiss on timeliness grounds, he would like an evidentiary hearing, but there was no request for an evidentiary hearing for other reasons. So in addition to the fact that there's nothing to show that, you know, the failure to produce the full or the additional pages from the system would have affected the outcome, would have changed the decision to voluntarily dismiss, there's also case law suggesting that longstanding Illinois Supreme Court case law, I should add, indicating that you can't dismiss a case can't vacate a voluntary dismissal. Now the court has abrogated those decisions with respect to motions under 2-1203 where a request to vacate is brought within 30 days of the entry of final judgment. But the Illinois Supreme Court has never abrogated the Weissguth and after that initial 30-day period has expired. But that's law that is binding on this court. Only the Illinois Supreme Court itself can say that no, that doesn't apply anymore. So based on that, there's no meritorious claim because you simply never can have meritorious claim under these circumstances to vacate a voluntary dismissal. Does the other side know if there were additional pages to that report? I believe, and so I should clarify. How many pages does the report really have? I don't know. The problem here is that the PEMINIC system, like there's not a PEMINIC report, it's a database that collects a variety of reports. So in the Simmons case, what we produced was the incident report in both cases. In the Simmons case, I guess it came out at opening arguments, there were some additional pages related to the peer review, a quality assurance review. They're technically not the same report, but I understand what Mr. LaFont is saying. Oh, but yeah, to the best of my knowledge, it's like the three pages, but there's nothing in the record to firmly establish that. And I can't say I know for certain. So in this case, it would be not one page, but three pages. That's my best understanding. Like I said, the report itself or the documents aren't in the PEMINIC report, but I can absolutely go back to my office and get it and bring it up here. Didn't you say you wanted to brief about the applicability of the Medical Records Act before you handed it over to the court? Yes, counsel did say that. So they didn't say, I'm going back to my office, get it and bring it to you. But she said, I can go back and get it, but if you're going to consider that in camera, I'd like to present additional discussion in terms of not just the medical studies portion of it, and to be certain that nothing improper was being disclosed, but also to sort of flesh out what had gone on in this case up to that point. Because what was or wasn't contained in those additional pages has to be taken into consideration in context of the fact that plaintiff's own expert basically conceded that approximate cause can't be established, that the outcome would have been the same for Mrs. Fredman, no matter what happened, because of the state of her health. But would the expert have made some use of this report in rendering opinion? I don't believe so, because the report doesn't go toward causation, it goes toward the hospital's review of what occurred, quality assurance, did they follow the proper protocols, did they follow the proper procedures? Well, just the argument a little bit or hypothetical, if there's disclosure, they didn't follow the proper procedures, would that in any way affect the approximate cause opinion? No, because the approximate cause opinion was based on the fact that this illness was terminal, that whether the issue with the tube getting pulled out had happened or not happened. Yeah, but I mean, we're all terminal, Ms. Janssen, some of us like to have a little more time. True, but from what was represented at the hearing, the expert did indicate that it wouldn't have made a difference in terms of how much more time she would have gotten it. She was being rushed into the emergency for a reason. And his expert conceded that even if this hadn't happened, this wasn't going to go well. We don't know that though. No, I suppose that's true. Mm-hmm. If the court has no further questions, I would simply ask that you affirm the judgment of the trial court denying the 2-1401. Okay, thank you, Ms. Janssen. Thank you. Mr. Lafonte, a reply to all of this? Yes, thank you, Your Honor. First, quickly, I believe that the three-page pneumatic report that was produced in Simmons may actually be in the record. And if Your Honor would like, I don't have the site, but I could email that to the court if you'd like to see that. I'd be happy to do that. I recall inviting the court to just look at it because I did have it in the other case, Simmons. Do you know that all these reports are always three pages? I don't know, Judge. I really don't know. I mean, what relevance would be if it's a suspicion, but you don't know if they're one page, two page, three page, or four pages, do you? Correct. I don't. And in this case, I didn't know that they existed. Were you told during the motion hearing by opposing counsel that there was more than one page? Yeah, she admitted during the argument that there were three pages. Okay, so you knew there was more than one page at the hearing. That's when I first learned for the first time that there were the number of pages. Which you've never seen. Right, correct. I've never seen them. The court's never seen them. To be clear, I did request an evidentiary hearing, and at the actual hearing in front of Judge Hoos, I asked the court for an in-camera inspection. I said, please do it. Well, this was in March, right? The hearing? Yeah. No, I think that hearing was in August. Well, it was an August 29th hearing, Judge. Okay, so that's an August 29th hearing where you learned about there was an admission there were additional pages, right?  Okay, and then when did you... That was March, right? No, that was August. Okay, and then when did you dismiss the case? Oh, no, no. I didn't know that there were any additional pages until almost 17 months after I dismissed the case. So, I just don't want you to think that I knew about this beforehand because that is not the case at all. You were made aware that there is a likelihood of more than a one page in this report from a case you were trying elsewhere, correct? Right, after I dismissed... That's the first time I learned that there was more. In another case. Right. Right. And that was in December of 2018, correct? Yes, Your Honor. Right. I'd like to address the issue of the tolling. The Illinois law on tolling is very clear. The cases cited by the defendants are not applicable. Those are cases where they knew about the information before the dismissal. There is not one case in Illinois that says that if you learn about fraudulently concealed information that you don't get to take advantage of the actual language of the statute that says that the time period during which grounds for relief is fraudulently concealed shall be excluded in computing the period of two years. So, just a plain language of the statute says when something's concealed like it was here, we didn't know about it. That time period, the time period from May 12, 2017 to December 10, 2018 is not counted in the two year period. So, I wanted to make sure I made that point. Also, she indicated that she believes case law says that you can't take, you can't file a 1401 petition when you voluntarily dismiss a case. I take exception to that too. The plain reading of the statute says all relief here to for obtainable and on the ground for such relief here to for available whether by any of the foregoing remedies or otherwise shall be available in every case regardless of the nature of the order or judgment from which relief is sought. So, I believe that you can file a 1401 petition and a case where you take a voluntary dismissal. So, I'd like to just sum this up by saying, Your Honors, again, the Fredman family have been seeking the truth. They've been seeking the truth for a very long time. They're looking for justice. I believe that in this case, it's clear that there was evidence that was not given or turned over even advised of the plaintiff. We didn't know about it. And I think that equity and justice require that this court enter an order reversing the trial court's order, dismissing the petition to vacate. Remanding for further proceedings. I think that if the court is inclined or thinks that a hearing has to be done, please remand it for a in-camera inspection and a full evidentiary hearing. And finally, I'd ask this court to affirm the trial court's order denying the defendant's motions to dismiss. Thank you very much. Okay. Thank you, Mr. Lafonte and Ms. Jansen for your fine arguments in this matter this afternoon. It will be taken under advisement and written disposition will issue. And the court will stand in recess. Thank you.